## LAUF ET AL. *v.* E. G. SHINNER & CO.

No. 293. Argued January 12, 1938.—Decided February 28, 1938.

324

*Mr. A. W. Richter* argued the cause, and *Mr. Morris Fromkin* was on the brief, for petitioners.

*Mr. Walter L. Gold* for respondent.

MR. JUSTICE ROBERTS delivered the opinion of the Court.

This is a suit to restrain the petitioners from picketing the respondent's place of business; from coercing the respondent to discharge any of its employes who do not belong to the petitioning union, or to compel them to become members of the union and to accept it as their bargaining agent and representative; and from advertising that the respondent is unfair to organized labor, or molesting customers or prospective customers or persuading them to cease patronizing it. After a hearing, and upon findings of fact and conclusions of law, the District Court granted a preliminary injunction. The Circuit Court of Appeals affirmed.[1] Upon final hearing the parties relied upon the record as made in the preliminary hearing and some additional testimony.

The District Court found the following facts: The respondent is a Delaware corporation maintaining five meat markets in Milwaukee, Wisconsin. The petitioners are, respectively, an unincorporated labor union and its business manager, citizens and residents of Wisconsin. · The respondent's employes number about thirty-five; none of them are members of the petitioning union. The petitioners made demand upon the respondent to require its employes, as a condition of their continued employment, to become members of the union. The respondent notified the employes that they were free to do this and that it was willing to permit them to join but they declined

---

[1] *Lauf* v. *Shinner & Co.*, 82 F. (2d) 68.

and refused to join. The union had not been chosen by the employes to represent them in any matter connected with the respondent. For the purpose of coercing the respondent to require its employes to join the union and to accept it as their bargaining agent and representative, as a condition of continued employment, and for the purpose of injuring and destroying the business if the respondent refused to yield to such coercion, the petitioners conspired to do the following things and did them: They caused false and misleading signs to be placed before the respondent's markets; caused persons who were not respondent's employes to parade and picket before the markets; falsely accused respondent of being unfair to organized labor in its dealings with employes, and, by molestation, annoyance, threats, and intimidation prevented patrons and prospective patrons of respondent from patronizing its markets; respondent suffered and will suffer irreparable injury from the continuance of the practice and customers will be intimidated and restrained from patronizing the stores as a consequence of petitioners' acts. There is more than $3,000 involved in the controversy.

The District Court held that no labor dispute, as defined by federal or state law, exists between the respondent and the petitioners or either of them; that the respondent is bound to permit its employes free agency in the matter of choice of union organization or representation; and that the respondent had no adequate remedy at law. It entered a final decree enjoining the petitioners from seeking to coerce the respondent to discharge any of its employes for refusal to join the union or to coerce the respondent to compel employes to become members of the organization, from advertising that the respondent is unfair to organized labor, and from annoying or molesting patrons or persuading or soliciting customers, present or prospective, not to patronize the respondent's markets.

The Circuit Court of Appeals affirmed the decree.[2] By reason of alleged conflict with a decision of the Supreme Court of Wisconsin, [222 Wis. 383; 268 N. W. 270, 873] and with our decision in *Senn* v. *Tile Layers Protective Union*, 301 U. S. 468, we granted the writ of certiorari.

In the Court of Appeals the petitioners assigned error to certain of the District Court's findings of fact as well as to its conclusions of law. In this court the only errors assigned are to the holdings that, on the facts found, there was no labor dispute and that the Norris-LaGuardia Act and the Wisconsin Labor Code had no bearing on the case as made. In these circumstances we accept the findings of fact and confine our inquiry to the correctness of the District Court's conclusions based upon them.

The institution of the suit in the federal court is justified by the findings as to diversity of citizenship and the amount in controversy. As the acts complained of occurred in Wisconsin the law of that State governs the substantive rights of the parties. But the power of the court to grant the relief prayed depends upon the jurisdiction conferred upon it by the statutes of the United States.

*First.* The District Court erred in holding that no labor dispute, as defined by the law of Wisconsin, existed between the parties. Section 103.62, paragraph (3) of the Wisconsin Labor Code,[3] is:

"The term 'labor dispute' includes any controversy concerning the terms or conditions of employment, or concerning the association or representation of persons in negotiating, fixing, maintaining, changing, or seeking to arrange terms or conditions of employment, or concerning employment relations, or any other controversy arising out of the respective interests of employer and employe, regardless of whether or not the disputants stand in the proximate relation of employer and employe."

[2] 90 F. (2d) 250.

[3] Wisconsin Statutes, 1937, c. 103, § 103.62.

The District Court was bound by the construction of the section by the Supreme Court of the State,[4] which has held a controversy indistinguishable from that here disclosed to be a labor dispute within the meaning of the statute.[5]

*Second.* The District Court erred in not applying the provisions of § 103.53 [6] of the Wisconsin Labor Code, which declares certain conduct lawful in labor disputes; *inter alia* "giving publicity to . . . the existence of, or the facts involved in, any dispute . . . by . . . patrolling any public street . . . without intimidation or coercion, or by any other method not involving fraud, violence, breach of the peace, or threat thereof"; advising, urging, or inducing, without fraud, violence or threat thereof, others to cease to patronize any person; peaceful picketing or patrolling, whether singly or in numbers. A Wisconsin court could not enjoin acts declared by the statute to be lawful;[7] and the District Court has no greater power to do so. The error into which the court fell as to the existence of a labor dispute led it into the further error of issuing an order so sweeping as to enjoin acts made lawful by the State statute. The decree forbade all picketing, all advertising that the respondent was unfair to organized labor and all persuasion and solicitation of customers or prospective customers not to trade with respondent.

---

[4] *Senn* v. *Tile Layers Union, supra,* p. 477.

[5] *American Furniture Co.* v. *Chauffeurs, Teamsters & Helpers Union,* 222 Wis. 338, 268 N. W. 250. See, also, *Senn* v. *Tile Layers Union, supra.*

[6] Wisconsin Statutes, 1937, c. 103, § 103.53.

[7] *Senn* v. *Tile Layers Protective Union,* 222 Wis. 383, 400, 268 N. W. 270, 872; *American Furniture Co.* v. *Chauffeurs, Teamsters & Helpers Union, supra.*

*Third.* The District Court erred in granting an injunction in the absence of findings which the Norris-LaGuardia Act [8] makes prerequisites to the exercise of jurisdiction.

Section 13 (c) of the Act [9] is:

"The term 'labor dispute' includes any controversy concerning terms or conditions of employment, or concerning the association or representation of persons in negotiating, fixing, maintaining, changing, or seeking to arrange terms or conditions of employment regardless of whether or not the disputants stand in the proximate relation of employer and employee."

This definition does not differ materially from that above quoted from the Wisconsin Labor Code, and the facts of the instant case bring it within both.

Section 7 [10] declares that "no court of the United States shall have jurisdiction to issue a temporary or permanent injunction in any case involving or growing out of a labor dispute, as herein defined" except after a hearing of a described character, "and except after findings of fact by the court, to the effect (a) that unlawful acts have been threatened and will be committed unless restrained or have been committed and will be continued unless restrained" and that no injunction "shall be issued on account of any threat or unlawful act excepting against the person or persons, association, or organization making the threat or committing the unlawful act or actually authorizing or ratifying the same . . ." By subsections (b) to (e) it is provided that relief shall not be granted unless the court finds that substantial and irreparable injury to complainants' property will follow; that as to

[8] Act of March 23, 1932, c. 90, 47 Stat. 70, U. S. C. Tit. 29, § 101 *et seq.*

[9] 47 Stat. 73; U. S. C. Tit. 29, § 113 (c).

[10] 47 Stat. 71; U. S. C. Tit. 29, § 107.

each item of relief granted greater injury will be inflicted upon the complainant by denying the relief than will be inflicted upon defendants by granting it; that complainant has no adequate remedy at law; and that the public officers charged with the duty to protect complainants' property are unable or unwilling to provide adequate protection. There can be no question of the power of Congress thus to define and limit the jurisdiction of the inferior courts of the United States.[11] The District Court made none of the required findings save as to irreparable injury and lack of remedy at law. It follows that in issuing the injunction it exceeded its jurisdiction.

*Fourth.* The Court of Appeals erred in holding that the declarations of policy in the Norris-LaGuardia Act and the Wisconsin Labor Code to the effect that employes are to have full freedom of association, self-organization, and designation of representatives of their own choosing, free from interference, restraint or coercion of their employers, puts this case outside the scope of both acts since respondent cannot accede to the petitioner's demands upon it without disregarding the policy declared by the statutes. This view was expressed in the court's first opinion on the appeal from the issue of an interlocutory injunction,[12] and the opinion on the appeal from the final order adopts what was said on the earlier appeal as the law of the case. We find nothing in the declarations of policy which narrows the definition of a labor dispute as found in the statutes. The rights of the parties and the jurisdiction of the federal courts are to be determined according to the express provisions applicable to labor disputes as so defined.

*Fifth.* Since the courts below were of opinion that a labor dispute, as defined by state and federal statutes,

---

[11] *Kline* v. *Burke Construction Co.,* 260 U. S. 226, 233–234.

[12] 82 F. (2d) 68, 72–73.

had not been shown, they did not pass on the questions of the legality, under the Wisconsin law, of the acts charged to have been done by the petitioners or the constitutionality of that law in legalizing any of such acts. As the case must go back for further proceedings, we express no opinion upon these questions.

The judgment is reversed and the cause remanded to the District Court for further proceedings in conformity with this opinion.

*Reversed.*

Mr. Justice Cardozo and Mr. Justice Reed took no part in the consideration or decision of this case.

Mr. Justice Butler, dissenting.

The opinion just announced reflects faithfully though quite nakedly the findings of fact. These and uncontradicted details disclose the circumstantial basis of the suit. Local No. 73 is an unincorporated labor union, never in any way related to respondent. None of its employees is a member of the union; all have definitely rejected the suggestion that they join it. In every legal sense, the union is a stranger both to respondent and its employees. Shortly before petitioners conspired to destroy respondent's business, one Joyce, of the American Federation of Labor, called by telephone respondent's vice-president, Russell, at his Chicago office. The latter's uncontradicted narration of the conversation follows: "Mr. Joyce . . . said 'We are in Milwaukee and want you fellows to join our Union up there. They tell me up there you are the man I must see, to get a contract signed for Shinner & Company with the Butchers Union up there.' I told him I could not sign any contract with him, that our men had their own association and were perfectly well satisfied, and didn't want to belong to any other union. He said 'Well, I am going there tonight

332

and if you don't join, I will declare war on you.' I said 'There is nothing I can do about it.' He said 'All right, the war is on, and may the best man win,' and he hung up."

Then followed *a demand by the union that respondent compel its employees, on pain of dismissal from their employment, to join the union and constitute it their bargaining representative and agent.* Respondent rightly declined to undertake any such interference with the liberty of its employees, but informed them that they were free to do as they saw fit. It left them wholly free to join or not to join the union; the union was left free to invite, urge, persuade or induce them to join. Every one who respects the lawful exercise of individual liberty of action must regard the attitude of the respondent as being above criticism and beyond reproach. The opinion of the Court just announced does not suggest a contrary view.

Under these circumstances, the union, in order to force respondent to coerce its employees, and in pursuance of a conspiracy to that end, publicly and falsely accused respondent of being unfair to labor in dealing with its employees; and by means of false placards and banners and by picketing, molestation, annoyance, threats and intimidation it prevented, and when this suit was brought was continuing to prevent, patrons and prospective patrons from dealing with respondent—all to the latter's serious and irreparable injury.

1. Respondent's business constitutes a property right; and the free opportunity of respondent and its customers to deal with one another in that business is an incident inseparable therefrom. It is hard to imagine a case which more clearly calls for equitable relief; and the court below rightly granted an injunction. *Truax* v. *Corrigan,* 257 U. S. 312, 327, and cases cited.

But here it is held that the decree conflicts with the Norris-LaGuardia Act. That the action demanded by petitioners of respondent with respect to its employees, if taken, would have been morally indefensible is plain; that it would have been against the declared policy of the Act is equally plain. That Act, 29 U. S. C., § 102,[1] declares that under prevailing conditions, the individual unorganized worker, "though he should be free to decline to associate with his fellow workers" should "have full freedom of association, self-organization, and designation of representatives of his own choosing," and should "be free from the interference, restraint, or coercion of employers of labor, or their agents, in the designation of such representatives," etc. This declaration of policy, as the introductory clause plainly recites, was intended as an

[1] Section 2 of the Act of March 23, 1932, 47 Stat. 70, 29 U. S. C. § 102:

"Public policy in labor matters declared. In the interpretation of this chapter and in determining the jurisdiction and authority of the courts of the United States, as such jurisdiction and authority are defined and limited in this chapter, the public policy of the United States is hereby declared as follows:

"Whereas under prevailing economic conditions, developed with the aid of governmental authority for owners of property to organize in the corporate and other forms of ownership association, the individual unorganized worker is commonly helpless to exercise actual liberty of contract and to protect his freedom of labor, and thereby to obtain acceptable terms and conditions of employment, wherefore, though he should be free to decline to associate with his fellows, it is necessary that he have full freedom of association, self-organization, and designation of representatives of his own choosing, to negotiate the terms and conditions of his employment, and that he shall be free from the interference, restraint, or coercion of employers of labor, or their agents, in the designation of such representatives or in self-organization or in other concerted activities for the purpose of collective bargaining or other mutual aid or protection; therefore, the following definitions of and limitations upon the jurisdiction and authority of the courts of the United States are hereby enacted."

aid "in the interpretation" of the Act and "in determining the jurisdiction and authority of the courts" under the Act. If respondent had joined the conspiracy and yielded to the demand of the union its action as an employer of labor unquestionably would have constituted an "interference, restraint, or coercion" of its employees in the designation of their representatives, in the teeth of the declared policy of the Act.

The opinion of the Court asserts, however, that this definite declaration of policy in no way narrows the definition of the phrase "labor dispute" found in substantive provisions of the Act. But that statement cannot be intended to suggest that the declaration of policy does not affect the meaning and application of the words used, for the opening clause of that declaration is precisely to the contrary. Whether a labor dispute exists in a given case depends upon the facts; and in each case the phrase "labor dispute" is to be interpreted in harmony with the declared policy of the Act. That is the congressional mandate and courts are required to observe it. In *Ozawa* v. *United States*, 260 U. S. 178, 194, we said "It is the duty of this Court to give effect to the intent of Congress. Primarily this intent is ascertained by giving the words their natural significance, but if this leads to an unreasonable result plainly at variance with the policy of the legislation as a whole, we must examine the matter further. We may then look to the reason of the enactment and inquire into its antecedent history and give it effect in accordance with its design and purpose, sacrificing, if necessary, the literal meaning in order that the purpose may not fail." See also to the same effect, *Heydenfeldt* v. *Daney Gold & S. M. Co.*, 93 U. S. 634, 638; *Holy Trinity Church* v. *United States*, 143 U. S. 457, 459 et seq.; *Fleischmann Construction Co.* v. *United States*, 270 U. S. 349, 360; *Karnuth* v. *United States*, 279 U. S. 231, 243. The principle applies here with peculiar force;

for it is an unnatural assumption to suppose that Congress intended by general definition of the flexible term "labor dispute" to annul its own very explicit declaration in respect to the policy to be observed by the courts in the administration of the Act.

The decision just announced ignores the declared policy of Congress that the worker should be free to decline association with his fellows, that he should have full freedom in that respect and in the designation of representatives, and especially that he should be free from interference, restraint, or coercion of employers. To say that a "labor dispute" is created by the mere refusal of respondent to comply with the demand that it compel its employees to designate the union as their representative unmistakably subverts this policy and consequently puts a construction upon the words contrary to the manifest congressional intent.

Moreover, the immediately preceding section of the Act, 29 U. S. C., § 101,[2] provides that no restraining order or injunction in a case involving or growing out of a labor dispute shall issue "contrary to the public policy declared in this chapter." Sections 101 and 102 taken, together constitute nothing less than an expression of the legislative will that the court shall enforce the public policy set forth in § 102 and shall have regard thereto in reaching a determination as to whether it has jurisdiction to issue an injunction in any particular case. Since the

---

[2] Section 1 of the Act of March 23, 1932, 47 Stat. 70, 29 U. S. C. § 101:

"Issuance of restraining orders and injunctions; limitation; public policy. No court of the United States, as defined in this chapter, shall have jurisdiction to issue any restraining order or temporary or permanent injunction in a case involving or growing out of a labor dispute, except in a strict conformity with the provisions of this chapter; nor shall any such restraining order or temporary or permanent injunction be issued contrary to the public policy declared in this chapter."

whole aim of the injury here inflicted and threatened to be inflicted by the union was to compel respondent to influence and coerce its employees in the designation of their representatives, the acts of the union were in plain defiance of the declared policy of Congress, and find no support in its substantive provisions.

2. But putting aside the congressional declaration of policy as an indication of meaning, and considering the phrase entirely apart, the facts of this case plainly do not constitute a "labor dispute" as defined by the Act. Undoubtedly "dispute" is used in its primary sense as meaning a verbal controversy involving an expression of opposing views or claims. The Act itself, 29 U. S. C., § 113 (c), so regards it: "The term 'labor dispute' includes any controversy concerning terms or conditions of employment," etc. In this case, there was no interchange or consideration of conflicting views in respect of the settlement of a controversial problem. There was simply an overbearing demand by the union that respondent should do an unlawful thing and a natural refusal on its part to comply. If a demand by a labor union that an employer compel its employees to submit to the will of the union, and the employer's refusal, constitute a labor controversy, the highwayman's demand for the money of his victim and the latter's refusal to stand and deliver constitute a financial controversy.

There being an utter lack of connection between the petitioners and respondent or its employees, the union was an intruder into the affairs of the employer and its employees. The union had the right to try to persuade the employees to join its organization; but persuasive methods failing, its right under the law in any manner to intermeddle came to an end. It lawfully could not coerce the employees to abandon their own organization and to join Local No. 73 any more than the employees could coerce the union to disband and its members to join

their organization. Otherwise, the worker would not "be free," as the Act requires, "to decline to associate with his fellows"; nor would he have "full freedom of association, self-organization and designation of representatives of his own choosing." Clearly the union could not be authorized by statute to resort to coercive measures *directly* against the employees to compel submission to its wishes, for that would be to give one group of workmen autocratic power of control in respect of the liberties of another group, in contravention of the Fifth Amendment as well as of the policy of Congress expressly declared in this Act. And that being true, the attempt to coerce submission through constrained interference of the employer was equally unlawful.

So far as concerns the question here involved, the phrase "labor dispute" is the basic element of the Act. For unless there was such a dispute—that is to say, a "controversy"—the Act does not even purport to limit the district court's jurisdiction in equity. The phrase must receive a sensible construction in harmony with the congressional intent and policy. There can be no dispute without disputants. Between whom was there a dispute here? There was none between the union and respondent's employees; for the latter were considered by the union mere pawns to be moved according to the arbitrary will of the union. There was none between respondent and its employees; for they were in full accord. And finally there was none between the union and respondent; for it would be utterly unreasonable to suppose Congress intended that the refusal of a conscientious employer to transgress the express policy of the law should constitute a "labor dispute" having the effect of bringing to naught not only the policy of the law, but the obligation of a court of equity to respect it and to restrain a continuing and destructive assault upon the property rights of the employer, as to which no adequate remedy at law existed.

338

3. As to what constitutes a "labor dispute" within the meaning of the Wisconsin statute, the interpretation put upon it by the highest court of that state is binding here. *Knights of Pythias* v. *Meyer*, 265 U. S. 30, 32. *Morehead* v. *New York ex rel. Tipaldo*, 298 U. S. 587, 609. But this Court authoritatively declares the meaning of Acts of Congress and is required to decide for itself what constitutes a "labor dispute," which, within the meaning of the Norris-LaGuardia Act, will have the effect of abridging the jurisdiction of a federal court.

The things here found to have been done for the purpose of coercing respondent to compel its employees to join the union are not declared lawful by the Wisconsin statute or by the courts of that state. Cf. *American Furniture Co.* v. *Chauffeurs, T. & H. Union*, 222 Wis. 338; 268 N. W. 250; *Senn* v. *Tile Layers Protective Union*, 222 Wis. 383; 268 N. W. 270, 872. While this Court refrains from condemning the means employed by petitioners, the opinion contains nothing to suggest that their conduct was not wrongful and unlawful. The publicity and peaceful picketing declared legal by Wisconsin laws are utterly unlike the display of libelous signs, parade of pickets, false accusations, molestation, threats and intimidation employed by the union, not on behalf of former or present employees of respondent, but to destroy the business of respondent. Here, by means everywhere held to be unlawful, the union carried on and was continuing to carry on a campaign of destruction in order to coerce respondent to deprive its employees of their right of freedom of association, self-organization and designation of representatives of their own choosing. That the Wisconsin statute does not attempt to make lawful the means employed by the union to impose its will upon respondent and its employees clearly appears from this Court's portrayal of that law in *Senn* v. *Tile Layers Union*, 301 U. S. 468.

The opinion in that case states (p. 478): "The judgment of the highest court of the state establishes that both the means employed and the end sought by the unions are legal under its law . . . The Legislature of Wisconsin has declared that 'peaceful picketing and patrolling' on the public streets and places shall be permissible 'whether engaged in singly or in numbers' provided this is done 'without intimidation or coercion' and free from 'fraud, violence, breach of the peace or threat thereof.' The statute provides that the picketing must be peaceful; and that term as used implies not only absence of violence but absence of any unlawful act. It precludes the intimidation of customers. It precludes any form of physical obstruction or interference with the plaintiff's business. It authorizes giving publicity to the existence of the dispute 'whether by advertising, patrolling any public streets or places where any person or persons may lawfully be'; but precludes misrepresentation of the facts of the controversy. And it declares that 'nothing herein shall be construed to legalize a secondary boycott.' . . . Inherently, the means authorized are clearly unobjectionable. In declaring such picketing permissible Wisconsin has put this means of publicity on a par with advertisements in the press. . . . The picketing was peaceful. The publicity did not involve a misrepresentation of fact; nor was any claim made below that relevant facts were suppressed."

The state statute, defining "labor disputes" and declaring the means that lawfully may be used against employers in such controversies, does not purport to make lawful either the end here sought by petitioners or the means they employed to attain it. Their purpose was not unionization of respondent's employees, for they already belonged to a labor organization of their own choosing. The purpose was to coerce the employees to join a particular organization which they had already repudiated. There

is nothing in the state or federal statutes that purports to give labor unions or individuals so contriving the status of party to a "labor dispute." Coercion of employees to surrender their freedom of self-organization is repugnant to both statutes. Wis. Stats., 1937, § 103.51. 29 U. S. C. §§ 101, 102. Cf. *American Furniture Co.* v. *Chauffeurs, T. & H. Union,* 222 Wis. 338; 268 N. W. 250; *Senn* v. *Tile Layers Protective Union,* 222 Wis. 383; 268 N. W. 270, 872; *Senn* v. *Tile Layers Union,* 301 U. S. 468. There is no ground upon which petitioners' purpose in this case or the means employed to accomplish it can be supported as lawful.

4. The case is a simple one. Respondent's employees had no connection with the union, and were unwilling to have any. The union, being unable to persuade the employees to assent to its wishes in that regard, undertook to subjugate them to its will by coercing an unlawful interference with their freedom of action on the part of the employer. If that is a "labor dispute," destructive of the historical power of equity to intervene, then the Norris-LaGuardia Act attempts to legalize an arbitrary and alien state of affairs wholly at variance with those principles of constitutional liberty by which the exercise of despotic power hitherto has been curbed. And nothing is plainer under our decisions than that if the Act does that, its effect will be to deprive the respondent of its property and business without due process of law, in contravention of the Fifth Amendment. *Truax* v. *Corrigan, supra,* 327–328.

I am of opinion that the circuit court of appeals rightly held that this case discloses no "labor dispute" within the meaning of the Norris-LaGuardia Act; that the union's coercive attack upon respondent was unlawful under state law and in violation of the policy declared by the federal statute, and was properly enjoined; and that, there being no "labor dispute" as defined by that Act, its pro-

visions as to allegations, proof, and findings do not apply. I would affirm the judgment.

MR. JUSTICE McREYNOLDS concurs in this opinion.