## TRI-PLEX SHOE CO. v. CANTOR et al.
### No. 30.

District Court, E. D. Pennsylvania.
Jan. 16, 1939.

Sundheim, Folz & Sundheim and Samuel D. Goodis, all of Philadelphia, Pa., Edward J. Ziegler, of Boston, Mass., and Allen J. Levin, of Philadelphia, Pa., for plaintiff.

Louis F. McCabe, of Philadelphia, Pa., for defendants.

DICKINSON, District Judge.

Leave was given to submit Briefs, which have now been submitted.

These motions raise questions which are academically interesting and are fraught with most important practical consequences in the application of the answers made. Underlying all of them is the right of employees to strike. This is admittedly their right because it is no more than their right to quit their employment. The right however is little more than an abstraction. The real objective of a strike is not the assertion of the right to quit work but to coercively induce the employer to grant to the employees better pay or better conditions of employment. It is only in the very rare situation of the demand for labor exceeding the supply, that a mere strike would have the intended effect. Under the conditions which usually prevail the only practical consequence of a strike would be that the striking employees would lose their jobs. Something more than the right to strike is needed to make the strike effective. If labor is persuaded to refuse to fill the places of the strikers or the patrons of the business of the employees can be induced to withhold their patronage, there is the promise of an effective strike because the employer can do no business as long as the strike lasts. This expands the right of the employees to strike, into the further right to convince other workers

and the public of the righteousness of their cause. This is closely akin to the right of free speech and is an admitted right. Hence we have the picket line. Here we approach a danger line, for it is the line which divides right from wrong than which no line is thinner. If those seeking employment and the public cannot be persuaded, they may be forced or frightened into aiding the strikers. Out of this have grown intolerable conditions which are too sadly familiar to need statement. A condition of terrorism is created which is subversive of all rights and of all law because it extends not merely to non-striking employees and those seeking employment but disrupts the public peace. The truth is that the more unrighteous the strike the surer is the resort to this lawless terrorism. The consequence is unfortunate to the cause of labor because it alienates the public sympathy which should be and otherwise would be extended to a worthy cause. Such a strike situation soon and easily gets beyond the control of the strikers. The lawless element which exists in every community sees in a strike the opportunity and an invitation to give rein to their lawlessness. Strikers are thus visited with undeserved condemnation. One reason for this extension of the consequences of a strike far beyond the merits of the particular controversy which provoked it is the recognition of two other rights. One is the right of employees to organize for self defense and protection. This is under modern conditions of employment not merely a right but a necessity. The relations between an employer and a small number of employees is largely personal. There are many checks upon its abuse. All these benefits are lost however when the employees are numbered by thousands. The modern trend is toward bigness. One of the greatest of our afflictions is this "vice of bigness". The evil is emphasized in the relations between employer and employee. The individual employee is lost in the mass. Concert of action, or as it has come to be known, collective bargaining, has become absolutely necessary to an effective assertion of the rights of employees. Individually the employee can do little or nothing to better the conditions of his employment. None the less there can be no denial of the other right to freedom of contract and the right of the individual employee to join or not join the ranks of organized labor. From this we get another cause of dispute or rather the merits of the strike are lost in the other question of who shall conduct the negotiations on behalf of the employees. This is the real cause of dispute we have before us.

Here an economic situation obtrudes itself. Membership in an organization implies the payment of dues. In the aggregate these reach a very large sum. Out of the receipt of a large income springs a value which makes appeal to cupidity and ambition. Thus is produced what every one must recognize to be an evil. Those who have no interest in employer or employee have a strong selfish interest in acting for the latter. We thus have strikes and the threat of strikes as a racket.

The reports of adjudged cases supply us with illustrations. One is that of a recent case. There the managers of a labor organization which did not have a single member among the employees of a plant demanded of the employer that it compel all its employees, on pain of dismissal, to join this organization; to grant to the officers of the organization the exclusive right of bargaining on behalf of the employees and to thereafter employ none but members of that organization. The consequence of a refusal of these demands was that by violence and the threat of violence the business of the employer was stopped by a picket line. The idea of a peaceful picket or peaceable picketing is a myth. The purpose is not to persuade other employees or the public but to stop the business of the employer. Hence the slogan "No true American will cross a picket line". The result is no patrons of the employer will cross the line except in fear and trembling or because he is asserting a right which he believes to be his, of trading with whom he pleases. There is in this situation the imminent risk of violence which too often attends strikes and has in some measure attended this one.

This is a doubtless overlong prelude to the motions before us. We are met at the threshold with an underlying question. The case is a State case and subject to the State law. We are asked to determine it as a Court of the United States. A situation is imaginable and indeed exists here, in which a plaintiff under the State law has the right to injunctive relief, but when this Court is asked to grant it, we are met by the provisions of the Norris-LaGuardia Act, 29 U.S.C.A. §§ 101–115, which prohibits us from employing the injunctive

remedy, unless certain fact situations exist. Take such a case as exists here. The law of the case is that of the State. Assume that under the State law the plaintiff has a cause of action cognizable in Equity with the right to injunctive relief. There is however diversity of citizenship with more than $3000 in controversy. Has this Court the judicial power, in face of the Norris-LaGuardia Act, to issue an injunction in a case involving a labor dispute?

The case of Lauf v. Shinner, 303 U.S. 323, 58 S.Ct. 578, 82 L.Ed. 872, has ruled for us that the Act limits the power of the Court in labor disputes to issue an injunction. This takes us to that Act. No injunction can issue without the finding of certain facts. Act of March 23, 1932, 29 U.S.C.A. §§ 101 to 115.

1. The injunction cannot restrain any of the acts enumerated in Section 104.

2. Section 106 forbids that any labor organization or officer thereof be held responsible for any acts committed unless personally and individually participating therein.

3. Under Section 107, Clause (a), no injunction can issue for acts of violence except against the individuals who committed the acts. Here acts of violence have been committed by individuals. There may be a finding of who the guilty parties were and an injunction issue against them.

4. Under Clause (b) there must be a finding of substantial and irreparable injury to the property of the plaintiff. The Supreme Court has held that the business in which a man is engaged is property. The finding may be made of such injury.

5. Under Clause (c) there must be a finding that greater injury will follow the denial than will follow the granting of relief. The plaintiff will suffer loss by a denial. The only effect upon the defendants of the granting of an injunction is psychological. They will incur no money loss. A finding of this fact may be made.

6. To comply with Clause (d) a finding of no adequate remedy at law may be made.

7. Clause (e) requires a finding that the police are unable to furnish adequate protection to the plaintiff. No just complaint can be made of the conduct of the police. They have afforded the plaintiff all the protection which it is possible to give. No police protection is adequate in a strike or can be fully given. This strike is an illustration. If the expression is an allowable one, it is as orderly a strike as any could be. Notwithstanding this there has been resort to unjustified violence. How much more there would have been or may yet be except for the proceedings instituted to retrain violence cannot be forecast. The good old Patrick Henry rule justifies the inference that there will be violence from the fact that there has been. The finding called for may be made.

8. The finding called for by Section 103 may be made.

9. The findings of fact called for by Section 109 may be filed and the form of the injunction issued is to comply with this Section.

10. The injunction bond required by Section 107 shall be in the penal sum of $5,000, with surety approved by the Clerk of the Court.

Counsel may submit findings of fact required by the Act in accordance with this opinion. When the findings are made a writ of injunction may issue.

We wish to express our appreciation and commendation of the frankness and fairness displayed by those concerned with this strike. It has been a great help in dealing with our part of the problem presented.