29 F.Supp. 15 (1939)
PAULY JAIL BLDG. CO. et al.
v.
INTERNATIONAL ASS'N OF BRIDGE, STRUCTURAL & ORNAMENTAL IRON WORKERS et al.
No. 255.
District Court, E. D. Missouri, E. D.
August 3, 1939.
*16 *17 Charles H. Spoehrer, of St. Louis, Mo., for plaintiffs.
Robert J. Keefe, of St. Louis, Mo., for defendants.
COLLET, District Judge.
Plaintiff Pauly Jail Building Company, a manufacturing company, and its subsidiary sales company Security Products Co., the plaintiffs, seek to enjoin the defendant labor unions and the individual defendants from (1) maintaining a secondary boycott interfering with its interstate business and (2) forcing plaintiffs to enter into a collective bargaining agreement with defendants as representatives of a majority of plaintiffs' employees when defendants do not represent such majority, in violation of the provisions of the Wagner Act.
On May 21, 1937, plaintiffs made a collective bargaining agreement with defendants concerning terms of employment, etc. This agreement did not contain a "union" shop or "closed" shop agreement. The contract expired May 21, 1938. Prior to the latter date plaintiffs and defendants began negotiations for the consummation of a new agreement. Defendants were demanding, among other things, a union or closed shop agreement. Plaintiffs refused to agree to that demand. The negotiations continued until September 22, 1938, when a strike was called at plaintiffs' plant by defendants. The plant closed and remained closed until November 30, 1938. At and prior to September 22, 1938, a majority of plaintiffs' employees belonged to defendant union. On November 30th, a majority of plaintiffs' employees who were employees at the time the strike was called returned to work. The plant opened and has been operating since that time. The strike is still being maintained by other members of the Union. A picket line has been maintained constantly since November 30, 1938, and defendants have advised and persuaded contractors in other states to refrain from using plaintiffs' products, representing that no union employees would be permitted to erect plaintiffs' products  steel windows, doors and other jail equipment  and if non-union workmen were employed to do so all union workmen on all the contractors' undertakings would be stopped from work. No threats of violence were made to contractors and builders. At all times since January 5, 1939, defendants have not represented a majority of plaintiffs' employees who were employed by plaintiffs on September 22, 1938, the date of the commencement of the strike. The plaintiffs are engaged in interstate business and the damage to that business from defendants' acts greatly exceed the jurisdictional amount.
Jurisdiction and the relief sought are predicated (1) upon the hypothesis that plaintiffs' cause of action arises under the National Labor Relations Act, 29 U.S.C.A. §§ 151-166, and involves a construction of that Act; that this Act gives to plaintiffs the right to be unmolested in the discharge of its legal duty, imposed by the Act, to deal in collective bargaining matters with one party and one party alone  the representative of the majority of its employees, and that if that right is violated injunctive relief may be resorted to, and (2) that the maintenance of a secondary boycott for the purpose of enforcing the negotiation of a collective bargaining agreement with less than a majority of plaintiffs' employees, interfering as those acts do with interstate commerce, is a violation of the Sherman Act (Secs. 1-7, incl., Title 15, U.S.C.A.), as amended by the Clayton Act (Secs. 12 to 27, incl., 44, Title 15, U.S.C.A.).
*18 The amount in controversy being sufficient and plaintiffs' right to the relief sought depending upon the application and construction to be given the National Labor Relations Act upon a question heretofore not finally determined, jurisdiction of the parties and subject matter exists under clause (a) of Subsection (1), Section 41, Title 28, U.S.C.A.[1]
The provisions of the National Labor Relations Act relative to the duty of the employer to deal only with representatives of the majority of its employees in making collective bargaining agreements (Sec. 158, subsec. (5) and sec. 159, subsec. (a), Title 29, U.S.C.A.) are analogous to the provisions of the Railway Labor Act relating to the same subject (Sec. 152, Ninth, Title 45 U.S.C.A.).[2]
In construing the Railway Labor Act the Court said: "The obligation imposed on the employer by section 2, Ninth (45 U.S.C.A. § 152, subd. 9), to treat with the true representative of the employees as designated by the Mediation Board, when read in the light of the declared purposes of the act, and of the provisions of section 2, Third and Fourth (45 U.S.C.A. § 152, subds. 3, 4), giving to the employees the right to organize and bargain collectively through the representative of their own selection, is exclusive. It imposes the affirmative duty to treat only with the true representative, and hence the negative duty to treat with no other." (Italics supplied.) Virginian R. v. System Federation, 300 U.S. 515, loc. cit. 548, 57 S.Ct. 592, loc. cit. 600, 81 L.Ed. 789.
The National Labor Relations Act imposes a similar duty upon the employer.[3] By imposing that duty Congress has made it unlawful for employers to make collective bargaining agreements with less than the majority. If it is unlawful for the employer to make collective bargaining agreements with less than a majority, it is unlawful for a person or persons to coerce that unlawful act. The picketing and acts constituting a secondary boycott were designed and intended to accomplish that purpose. Those acts were therefore unlawful and must be restrained unless this Court be prohibited from granting that relief by the Norris-La Guardia Act, 29 U.S.C.A. §§ 101-115. That question will be considered hereafter.
The Sherman Act is violated if defendants' acts amount to an unlawful conspiracy in restraint of interstate commerce. To constitute an unlawful conspiracy it is necessary that either the acts be unlawful or that the acts, although lawful in themselves, be done for an unlawful purpose. Duplex Printing Press Co. v. Deering, 254 U.S. 443, loc. cit. 465, 41 S.Ct. 172, 615 L.Ed. 349, 16 A.L.R. 196. Picketing, solicitations to refrain from the use of plaintiffs' products, threats to discontinue work or to strike without fraud or violence when committed in concert with others for the purpose of restraining interstate commerce violate the Sherman Act. The purpose and *19 object of those acts was also unlawful. The purpose was concededly to force plaintiffs to enter into a collective bargaining agreement with defendants as the representatives of a majority of plaintiffs' employees. The means adopted for the accomplishment of that purpose was an interference with and destruction of plaintiffs' interstate commerce. Since defendants have not since January 5, 1939, represented a majority of plaintiffs' employees, defendants' purpose was unlawful by reason of the provisions of the National Labor Relations Act. The acts done in the effort to accomplish that purpose constitute an unlawful conspiracy as defined by the Sherman Act, supra. Again, the applicability and limiting effect of the Norris-LaGuardia Act arises.
That this action involves a labor dispute within the meaning of the Norris-LaGuardia Act (29 U.S.C.A. §§ 101-115) is no longer doubtful.[4] Lauf v. E. G. Shinner, 303 U.S. 323, 58 S.Ct. 578, 82 L.Ed. 872; Donnelly Garment Co. et al. v. International Ladies' Garment Workers' Union et al., 8 Cir., 99 F.2d 309; Grace Co. v. Williams et al., 8 Cir., 96 F.2d 478. The limitations of that Act upon the jurisdiction of District Courts in actions involving labor disputes are therefore applicable. Those limitations are quoted in the margin.[5]
*20 It will be noted that Section 107 requires the finding of certain conditions precedent to the issuance of an injunctive order, Section 104 designates certain specific things which may not be restrained, while Section 109 restricts the scope of any restraining order or injunction to specific acts set out in the bill of complaint and supported by specific findings of fact.
Section 107: No temporary restraining order was issued. The parties agreed to combine the hearing on the merits with the hearing on the application for a temporary injunction. All parties were represented and offered evidence.
(a) The complaint alleges and the testimony establishes the facts relied upon (referred to heretofore) as constituting a violation of the National Labor Relations Act and the Sherman Act and that such acts will be continued if not restrained.
(b) That substantial and irreparable injury to complainant's property has and will follow from the acts of defendants was clearly established.
*21 (c) It definitely appears that as to each item of relief prayed for greater injury will be inflicted upon plaintiffs by the denial of relief than will be inflicted upon defendants by the granting of relief.
(d) Plaintiffs have no adequate remedy at law.
(e) By reason of the nature of the acts committed by defendants and the character of injury and the manner of inflicting that injury, the public law enforcement agencies are unable to furnish plaintiffs protection from the injuries received and threatened.
The requirements of Section 107 obviously have been met and all reasonable efforts to settle the dispute have been made by plaintiffs.
Section 104: Since this Court may not enjoin acts specifically exempted from restraint by Congress or made lawful by State law, and since all of the defendants are parties to the "labor dispute" (Lauf v. Shinner, supra), no injunction may be issued by this Court requiring defendants to (a) remain in the employ of plaintiffs or contractors or builders erecting or purchasing plaintiffs' products, or absent fraud (g) from notifying such persons of an intention so to do, nor (h) from agreeing with other persons not to remain in the employ of plaintiffs or of contractors or builders using plaintiffs' products, or of prospective purchasers of plaintiffs' products.
Subsections (b), (c), (d), (f) of Section 104 are not involved in this action.
Subsection (e): The evidence does not disclose the commission of acts of violence. Advertising by picketing or otherwise, not involving fraud or violence, may not be enjoined. There is no evidence of violence committed or threatened. There is a charge and evidence of fraud in the publicity given defendants' dispute with plaintiffs. Defendants have represented to many that a strike is in existence as a result of a refusal by plaintiffs to enter into a collective bargaining agreement with it. An implication so clear as to amount to a definite representation was given that the contract demanded by defendants was one which plaintiffs should properly sign or failing to do so be unfair to organized labor. That was not true. The agreement could not properly have been made with defendants and it constituted fraud to directly or by implication represent to others that plaintiffs were unfair to defendants or organized labor on account of their refusal to make a collective bargaining agreement with them.
Although defendants may advise, urge or otherwise induce others not to perform labor on the erection or installation of plaintiffs' products or on buildings in which plaintiffs' products are used (see subsection (i), Section 104, supra), yet they may not in doing so make fraudulent representations of the character above referred to.
One further question merits attention. Defendants contended throughout the trial that evidence tending to show that defendants' representative who demanded the right to make a collective bargaining agreement with plaintiffs was not in fact the representative of the majority of plaintiffs' employees, was inadmissible because this Court had no jurisdiction to determine that fact, such a prerogative being solely within the power of the National Labor Relations Board.
This court is not undertaking to determine who the representatives of the majority of plaintiffs' employees are. It is admitted that no election under the auspices of the Labor Board has ever been held and no certification by that board has been made. Until that occurs defendants must show in some other manner their right to insist upon recognition as the sole bargaining agent of plaintiffs' employees and failing to do so, recede from their position as the representatives of the majority. If and when conditions change and defendants should become the proper representatives of a majority, it will then be soon enough to contemplate that situation.
An order will be entered in accordance with the views expressed restraining defendants from acts involving the fraudulent representations herein referred to.
NOTES
[1] Section 41. "Original jurisdiction. The district courts shall have original jurisdiction as follows: * * * or, where the matter in controversy exceeds, exclusive of interest and costs, the sum or value of $3,000, and (a) arises under the Constitution or laws of the United States, or treaties made, or which shall be made, under their authority, * * *." Smith v. K. C. Title & Trust Co., 255 U.S. 180, 41 S.Ct. 243, 245, 65 L.Ed. 577: "The general rule is that, where it appears from the bill or statement of the plaintiff that the right to relief depends upon the construction or application of the Constitution or laws of the United States, and that such federal claim is not merely colorable, and rests upon a reasonable foundation, the District Court has jurisdiction under this provision." Sec. 41, Title 28, U.S.C.A.
[2] "The provision of section 9(a), [159a, Title 29, U.S.C.A.], that representatives, for the purpose of collective bargaining, of the majority of the employees in an appropriate unit shall be the exclusive representatives of all the employees in that unit, imposes upon the respondent only the duty of conferring and negotiating with the authorized representatives of its employees for the purpose of settling a labor dispute. This provision has its analogue in section 2, Ninth [Sec. 152, Ninth, 45 U.S.C.A.], of the Railway Labor Act, as amended (45 U.S.C.A. § 152, subd. 9), which was under consideration in Virginia Railway Co. v. System Federation No. 40, supra." National Labor Board v. Jones & Laughlin, 301 U.S. 1, loc. cit. 44, 57 S.Ct. 615, loc. cit. 627, 81 L.Ed. 893, 108 A.L.R. 1352.
[3] "We think this construction also applies to section 9(a) of the National Labor Relations Act." National Labor Board v. Jones & Laughlin, 301 U.S. 1, loc. cit. 45, 57 S.Ct. 615, loc. cit. 628, 81 L.Ed. 893, 108 A.L.R. 1352.
[4] Section 113. Definitions of terms and words used in chapter. When used in this chapter, and for the purposes of this chapter 

"(a) A case shall be held to involve or to grow out of a labor dispute when the case involves persons who are engaged in the same industry, trade, craft, or occupation; or have direct or indirect interests therein; or who are employees of the same employer; or who are members of the same or an affiliated organization of employers or employees; whether such dispute is (1) between one or more employers or associations of employers and one or more employees or associations of employees; (2) between one or more employers or associations of employers and one or more employers or associations of employers; or (3) between one or more employees or associations of employees and one or more employees or associations of employees; or when the case involves any conflicting or competing interests in a `labor dispute' (as hereinafter defined) of `persons participating or interested' therein (as hereinafter defined).
"(b) A person or association shall be held to be a person participating or interested in a labor dispute if relief is sought against him or it, and if he or it is engaged in the same industry, trade, craft, or occupation in which such dispute occurs, or has a direct or indirect interest therein, or is a member, officer, or agent of any association composed in whole or in part of employers or employees engaged in such industry, trade, craft, or occupation.
"(c) The term `labor dispute' includes any controversy concerning terms or conditions of employment, or concerning the association or representation of persons in negotiating, fixing, maintaining, changing, or seeking to arrange terms or conditions of employment, regardless of whether or not the disputants stand in the proximate relation of employer and employee." 29 U.S.C.A. § 113(a-c).
[5] "§ 101. Issuance of restraining orders and injunctions; limitation; public policy.

"No court of the United States, as defined in this chapter, shall have jurisdiction to issue any restraining order or temporary or permanent injunction in a case involving or growing out of a labor dispute, except in a strict conformity with the provisions of this chapter; nor shall any such restraining order or temporary or permanent injunction be issued contrary to the public policy declared in this chapter. (Mar. 23, 1932, c. 90, § 1, 47 Stat. 70)."
"§ 104. Enumeration of specific acts not subject to restraining orders or injunctions. No court of the United States shall have jurisdiction to issue any restraining order or temporary or permanent injunction in any case involving or growing out of any labor dispute to prohibit any person or persons participating or interested in such dispute (as these terms are herein defined) from doing, whether singly or in concert, any of the following acts:
"(a) Ceasing or refusing to perform any work or to remain in any relation of employment;
"(b) Becoming or remaining a member of any labor organization or of any employer organization, regardless of any such undertaking or promise as is described in section 103 of this chapter;
"(c) Paying or giving to, or withholding from, any person participating or interested in such labor dispute, any strike or unemployment benefits or insurance, or other moneys or things of value;
"(d) By all lawful means aiding any person participating or interested in any labor dispute who is being proceeded against in, or is prosecuting, any action or suit in any court of the United States or of any State;
"(e) Giving publicity to the existence of, or the facts involved in, any labor dispute, whether by advertising, speaking, patrolling, or by any other method not involving fraud or violence;
"(f) Assembling peaceably to act or to organize to act in promotion of their interests in a labor dispute;
"(g) Advising or notifying any person of an intention to do any of the acts heretofore specified;
"(h) Agreeing with other persons to do or not to do any of the acts heretofore specified; and
"(i) Advising, urging, or otherwise causing or inducing without fraud or violence the acts heretofore specified, regardless of any such undertaking or promise as is described in section 103 of this chapter. (Mar. 23, 1932, c. 90, § 4, 47 Stat. 70.)"
"§ 107. Issuance of injunctions in labor disputes; hearing; findings of court; notice to affected persons; temporary restraining order; undertakings. No court of the United States shall have jurisdiction to issue a temporary or permanent injunction in any case involving or growing out of a labor dispute, as herein defined, except after hearing the testimony of witnesses in open court (with opportunity for cross-examination) in support of the allegations of a complaint made under oath, and testimony in opposition thereto, if offered, and except after findings of fact by the court, to the effect 
"(a) That unlawful acts have been threatened and will be committed unless restrained or have been committed and will be continued unless restrained, but no injunction or temporary restraining order shall be issued on account of any threat or unlawful act excepting against the person or persons, association, or organization making the threat or committing the unlawful act or actually authorizing or ratifying the same after actual knowledge thereof;
"(b) That substantial and irreparable injury to complainant's property will follow;
"(c) That as to each item of relief granted greater injury will be inflicted upon complainant by the denial of relief than will be inflicted upon defendants by the granting of relief;
"(d) That complainant has no adequate remedy at law; and
"(e) That the public officers charged with the duty to protect complainant's property are unable or unwilling to furnish adequate protection."
"§ 108. Noncompliance with obligations involved in labor disputes or failure to settle by negotiation or arbitration as preventing injunctive relief. No restraining order or injunctive relief shall be granted to any complainant who has failed to comply with any obligation imposed by law which is involved in the labor dispute in question, or who has failed to make every reasonable effort to settle such dispute either by negotiation or with the aid of any available governmental machinery of mediation or voluntary arbitration. (Mar. 23, 1932, c. 90, § 8, 47 Stat. 72.)"
"§ 109. Granting of restraining order or injunction as dependent on previous findings of fact; limitation on prohibitions included in restraining orders and injunctions. No restraining order or temporary or permanent injunction shall be granted in a case involving or growing out of a labor dispute, except on the basis of findings of fact made and filed by the court in the record of the case prior to the issuance of such restraining order or injunction; and every restraining order or injunction granted in a case involving or growing out of a labor dispute shall include only a prohibition of such specific act or acts as may be expressly complained of in the bill of complaint or petition filed in such case and as shall be expressly included in said findings of fact made and filed by the court as provided herein. (Mar. 23, 1932, c. 90, § 9, 47 Stat. 72.)"