## NATIONAL LABOR RELATIONS BOARD v. STERLING FURNITURE CO. et al.

### No. 13196.

United States Court of Appeals
Ninth Circuit.

Feb. 4, 1953.

---

42

George J. Bott, Gen. Counsel, N.L.R.B., David P. Findling, Asso. Gen. Coun., A. Norman Somers, Asst. Gen. Coun., Dominick L. Manoli and Harvey B. Diamond, Attorneys, N.L.R.B., Washington, D. C., for petitioner.

St. Sure & Moore, Oakland, Cal., for respondent Sterling Furniture & Retail Furniture Ass'n.

Watson A. Garoni, San Francisco, Cal., for respondent Carpet, Linoleum & Soft Tile Workers.

Before STEPHENS, HEALY, and ORR, Circuit Judges.

HEALY, Circuit Judge.

This is a proceeding by the National Labor Relations Board for enforcement of its order directed against respondents Sterling Furniture Company (hereafter called Sterling) and the Carpet, Linoleum & Soft Tile Workers, Local No. 1235 (herein called the Union).

Sterling is and long has been a member of the San Francisco unit of the Retail Furniture Association of California, a voluntary nonprofit association organized under California law. The latter organization will be referred to hereafter as the Association. On behalf of Sterling and the seven other member employers of its San Francisco unit, the Association has had a series of bargaining contracts with the Union, the one here involved (and so far as we know, the latest) being made October 15, 1949. This contract contained provisions requiring membership in the Union, or a work permit from it, as a condition of employment by Association members. It is conceded that the contract in these respects failed to meet the requirements of § 8(a)(3) of the Act, 29 U.S. C.A. § 158(a)(3), relating to permissible union-security agreements.[1]

1. At the time of the execution of the contract the section referred to permitted agreements requiring, as a condition of employment, membership in the union on or after the 30th day following the beginning of such employment or the effective date of the agreement, whichever was later provided that the union was the bargaining representative of the employees to be covered by the agreement and had been authorized by the employees in a Board conducted election to make such an agreement. By Public Law 189, 65 Stat. 601, passed October 22, 1951, Congress eliminated the requirement that the union have authorization from the employees to make such an arrangement, but left undisturbed the other requirements for a permissible union-security agreement.

About the date this contract became effective a workman named Barnes applied to Sterling for a job as a carpet layer and was told by Sterling's superintendent that he would be hired if he obtained a permit from the Union. Barnes procured such a permit from the Union's business agent, limited to the month of October, 1949, and he was employed by Sterling until the end of that month. At that time Barnes was told by the business agent that no further permits would be issued to him, and Sterling's foreman advised him that he could not continue work without a Union permit. His employment by Sterling then ceased. It is apparent that this treatment of Barnes, while in conformity with the express terms of the contract between the Union and the Association, was in violation of the terms of the Act relating to union-security agreements. There is no dispute here that such was the case and that the provision was invalid.

At the hearing on the complaint counsel for Sterling, who was likewise counsel for the Association, moved that the Association be permitted to intervene. This motion was granted by the trial examiner and the Association was made a party to the proceeding, submitted itself without reservation to the jurisdiction of the Board, and waived any objection to being bound by Board order by reason of any lack or defect in pleadings or otherwise. The Board later approved the action of the examiner in this respect, stating that the intervention of the Association was proper not only under general principles of practice and procedure, but was proper under § 10(b) of the Act.

The Board found that the union-security provisions of the contract between the Union on the one hand and the Association on behalf of its member employers on the other, was illegal because in contravention of the requirements of § 8(a) (3), already described. It found that Sterling, by enforcing the contract, restrained its employees in the exercise of their guaranteed rights, thereby violating § 8(a)(1); lent its support to the Union, thereby violating § 8(a)(2); and that it violated § 8(a)(3) by discriminating il-

legally in regard to the hire and tenure of Barnes. The Board was not content merely to enjoin Sterling from giving effect to the illegal security provisions of the contract. It ordered Sterling to cease and desist from recognizing the Union as the representative of its employees, and from giving effect to any of the provisions of the Association contract with the Union, or any other contract, relative to "grievances, labor disputes, wages, rates of pay, hours of work, or other conditions of employment," unless and until the Union has been certified by the Board as representative of Sterling's employees in a proceeding under § 9(c), 29 U.S.C.A. § 159(c).

■ This order was not directed to and does not run against the Association, notwithstanding the collective bargaining agreement involved is the Association agreement, and the employer unit is the Association. The obvious effect of the order is to remove Sterling from the Association wide unit and thus to disrupt and dismember the unit. As will be seen in a moment the Board in its decision denied this, but in its brief here it appears to concede the contrary. It says that "such temporary disruption * * * as may ensue from the order must be weighed against the necessity for remedying the unfair labor practices found * * *." On the other hand, Sterling and the Association urge that the unfair practices are remediable without producing the undesirable result of disrupting the long established group bargaining unit. Their argument is that since the contract has been found to be illegal and unenforceable, it is therefore so and should be declared so with respect to the entire Association, not merely as to one of its constituent members. The General Counsel for the Board took the same position in exceptions filed to the trial examiner's report. His recommendation to the Board was, in substance, that either the Union and the Association unit should be ordered to cease and desist from enforcing the illegal union-security clause while continuing to recognize the balance of the 1949 agreement; or the entire 1949 agreement should be made unenforceable between the Union and the Association unit

until the Union has been certified by the Board.

As we read the Board's decision, its refusal to follow these just and sensible recommendations was based, not on considerations having to do with vindicating the policy of the Act, but on assumed procedural difficulties which do not appear to us to have reality or substance. In discussing the remedy, the Board stated: "The General Counsel has excepted to the Trial Examiner's failure to recommend that the Board's Order be directed against the Association. However, no charge was filed herein against the Association or the companies, other than Sterling, on whose behalf the Association executed the contract herein. As noted by the Trial Examiner, the complaint was not amended to include the Association as a party respondent. We shall therefore not adopt the Trial Examiner's conclusion that the Association violated Section 8(a) (1), (2), and (3) of the Act, or his finding that the Respondent Union violated Section 8(b) (2) by causing or attempting to cause the Association to violate Section 8(a) (3) of the Act. The General Counsel argues that by directing the Respondent Company [Sterling] to withdraw recognition from the Respondent Union until certified by the Board, without also so directing the Association, the Board would, in effect, withdraw the Respondent Company from the alleged appropriate multiemployer unit. We do not agree. We are not, in this proceeding, concerned with the determination of unit questions."

At another place in its opinion the Board observed that the complaint alleged merely the maintenance and enforcement of the contract, and not its execution, as being violative of the Act. But it is plain from the record that the entire contract was under attack in the proceeding.

Section 10(b) of the Act, 29 U.S.C.A. § 160(b), authorizes the hearing officer and the Board itself, in its discretion, to amend the complaint at any time prior to the issuance of an order based thereon. Here the Association appeared of its own volition and subjected itself to the Board's jurisdiction, so that its not being named in the charge is a wholly immaterial circumstance. Furthermore, the Board and its hearing officer have authority to order the complaint amended to conform to the proof.[2] The Board, without doing violence to the spirit or letter of the statute, could readily have directed needful amendments to bring the Association within the scope of its order; and we think it is the Board's duty to exercise such power where, as here, a just and full disposition of the case suggests that course.

We would not hesitate to decree enforcement of the order as against Sterling if confined to a command to cease giving effect to the illegal union-security provisions, or to enforce it in its entirety against Sterling if the Association were included as well. But as the order stands the court is not disposed to enforce it. The case will be remanded to the Board for its further consideration in light of this opinion.

In remanding the matter it seems advisable that we discuss, also, the Union's complaint as to the scope of the order directed against itself. The command is that it cease and desist from "(1) Performing or giving effect to its contract of October 15, 1949, with Retail Furniture Association

2. The language of § 10(b) bearing on this subject is as follows: "Any such complaint may be amended by the member, agent, or agency conducting the hearing or the Board in its discretion at any time prior to the issuance of an order based thereon. The person so complained of shall have the right to file an answer to the original or amended complaint and to appear in person or otherwise and give testimony at the place and time fixed in the complaint. In the discretion of the member, agent, or agency conducting the hearing or the Board, any other person may be allowed to intervene in the said proceeding and to present testimony. Any such proceeding shall, so far as practicable, be conducted in accordance with the rules of evidence applicable in the district courts of the United States under the rules of civil procedure for the district courts of the United States, adopted by the Supreme Court of the United States pursuant to section 2072 of Title 28."

of California, San Francisco Unit, insofar as it affects employees of the Respondent Company, or to the clauses of *any agreement* with the Respondent Company, *or any other employer,* which requires employees to join, or maintain their membership in, the Respondent Union as a condition of employment, unless such agreement has been authorized as provided in the Act; * *."
[Emphasis supplied.]

Insofar as this paragraph precludes the Union from giving effect to this or any invalid union-security clause in its relations with the Association, or any of its members, the paragraph is obviously appropriate. However, the language is so broad as to prohibit activity of the Union which may be entirely lawful. As the Union points out, the law of California does not prohibit union shop or closed shop arrangements. The Union says it has similar agreements with some 80 or 90 small establishments whose businesses do not affect interstate commerce. The prohibition against "any agreement with any other employer" requiring membership in the Union as a condition of employment might well, as a practical matter, restrain the Union in respect of its lawful activities. Compare Lauf v. E. G. Shinner & Co., 303 U.S. 323, 328, 58 S.Ct. 578, 82 L.Ed. 872. In borderline situations the Union can not know until the Board or this court has spoken whether its closed or union shop agreements are valid or invalid, so it is required to proceed more or less in terrorem or, as an alternative, to forego freedom of action which in good faith it deems itself entitled to take.