NATIONAL LABOR RELATIONS
BOARD, Petitioner,

v.

STERLING FURNITURE COMPANY and
Carpet, Linoleum & Soft Tile Work-
ers, Local No. 1235, Respondents.

No. 13196.

United States Court of Appeals
Ninth Circuit.

Nov. 23, 1955.

Theophil C. Kammholz, Gen. Counsel,
N. L. R. B., Chicago, Ill., David P. Find-
ling, Associate Gen. Counsel, Marcel
Mallet-Prevost, Asst. Gen. Counsel, Dom-
inick L. Manoli, Arnold Ordman, Harvey
B. Diamond, Attys., N. L. R. B., Wash-
ington, D. C., Louis S. Penfield, Regional
Atty., N. L. R. B., San Francisco, Cal.,
for petitioner.

St. Sure & Moore, Oakland, Cal., for
Sterling Furniture Co.

Watson A. Garoni, San Francisco, Cal.,
for Union.

Before STEPHENS, HEALY and
ORR, Circuit Judges.

HEALY, Circuit Judge.

On an earlier occasion certain aspects of this enforcement proceeding were before us, 9 Cir., 202 F.2d 41, at which time we expressed agreement with the Board's findings of violation but remanded the cause for reconsideration of a phase of its remedial order. On remand the Board decided that it would best effectuate the policies of the Act not to enforce its order in its entirety against the Association; and it amended the order to accord with the alternative suggested by this court. We further held that under the circumstances appearing to exist the order as against the Union was too broad. The Board took what was said on that subject as no more than a suggestion that it reconsider the point, and its original order as against the Union was permitted to stand unchanged. However, what was held in the opinion in respect of the undue breadth of the order must be accepted as the law of the case.

On remand the Board conducted proceedings to determine the amount of back pay necessary to make whole the employee Barnes, against whom the unfair practice had been directed. Following the usual hearing before a trial examiner, the making by the latter of an intermediate report, and the filing of exceptions by respondents, the Board issued a supplemental decision setting out its findings; and it ordered that respondents jointly pay Barnes the sum of $3,693.70.

In arriving at the sum the Board determined that the period of respondents' back-pay liability began October 29, 1949, the date of Barnes' discriminatory discharge, and ended on November 15, 1950, when Sterling offered reinstatement to Barnes. The controversy here largely revolves around this determination. The respondents contend that back pay could properly be awarded only for the period beginning October 29, 1949, and ending December 31 following. It appears that on the latter date a seasonal shortage of work brought about the discharge by Sterling of five carpet layers. Had Barnes been on Sterling's payroll at that date his lack of seniority would have necessitated his inclusion in the group discharged. This circumstance, however, was recognized by the Board; and in computing the award it excluded the period beginning December 31, 1949, and ending February 16, 1950, when the seasonal shortage of work ended and Sterling took on a number of additional carpet layers. Sterling produced no evidence that any former employee with greater seniority than that of Barnes was hired on that date. The Board found that if Barnes had been reinstated on February 16 he would have continued in Sterling's employ until the date of the latter's offer of reinstatement on November 15 following. Respondents' objection to this finding is that Sterling has at no time pursued a policy of laying off and recalling employees subject to fluctuations in the work schedule, and that none of the employees discharged on December 31 was ever rehired by it during the period January 1 to November 15, 1950. Consequently, it is argued, back pay can not properly be awarded Barnes for any period subsequent to December 31, the date upon which his employment would have been terminated even if no discrimination had been practiced against him. For this proposition Sterling cites Marlin-Rockwell Corp. v. N. L. R. B., 2 Cir., 133 F.2d 258; N. L. R. B. v. Carolina Mills, Inc., 4 Cir., 190 F.2d 675; Corning Glass Works v. N. L. R. B., 2 Cir., 118 F.2d 625; and N. L. R. B. v. American Creosoting Co., 6 Cir., 139 F.2d 193. We have read those cases, and are not able to see that they lend any support to the argument.

The Board concedes that an employer may, without incurring back-pay liability, refrain from reinstating a discriminatorily discharged employee during a period when employment would not have been available for him even absent the discrimination. But it takes the position that when such employment becomes available the employer, to escape back-

pay liability, is under the necessity of offering the employment to the discriminatee. The Board points to the testimony of Sterling's carpet department foreman, Rossi, who explained that it was not his practice to seek out laid-off employees when more help was needed. His practice was to call the Union and ask it for a list of the available men and make his selection from them. This practice, the Board insists, was precisely the procedure which gave rise in the first instance to the unlawful discrimination against Barnes. Respondents, it says, are in no position to urge the same unlawful discrimination as a reason for not offering reinstatement to Barnes.

■■ The record shows that on January 18, 1950 the Union had advised Barnes that his application for union membership was rejected and that no further opportunities for employment through the Union would be available. In these circumstances it was not unreasonable for the Board to conclude, as it did, that the effect of Sterling's hiring practice was to continue indefinitely its discrimination against Barnes.

■■ Respondents contend that Barnes made no reasonable effort to obtain employment after December 31. The record, however, amply supports the Board's finding to the contrary. Two days after his discharge by Sterling in October Barnes registered for employment and for unemployment compensation with the California State Employment Service, listing himself as available for work not only as a carpet layer but also as a truck driver and station attendant. On the same day he approached the Union and inquired as to the possibility of obtaining another work permit, or of becoming a union member if that was necessary. The request was denied, but later on the Union agreed to permit him to work for a trial period and gave him a referral to a concern from which he obtained work as a carpet layer for two weeks. Another referral enabled him to get employment for about a week, but on January 18,

1950, as already noted, the Union advised him that no further opportunity for work through the Union would be available. Following this he repeatedly visited the State unemployment office and made the rounds of various stores and other business establishments without success. In June following he got a job as gas station attendant and worked there until late in August when the concern operating the station went out of business. In September he obtained part-time employment as a carpet layer with a rug company and was still working there when Sterling offered to reinstate him.

Except as to the phrase "or any other employer" contained in clause (a) (1) of the cease and desist order directed against the Union, a decree will be entered as prayed in the Board's petition.