**Michael R. SHEMONSKY, Plaintiff,**

v.

**OFFICE OF THRIFT SUPERVISION, DEPARTMENT OF the TREASURY, and Director of the Office of Thrift Supervision, Defendants.**

**No. 3:CV–90–0180.**

United States District Court, M.D. Pennsylvania.

March 29, 1990.

Michael R. Shemonsky, Taylor, Pa., pro se.

Scott T. Kragie, Squire, Sanders & Dempsey and Jordan Luke and Michelle Kosse, OTS, Chief Counsel, Washington, D.C., for defendants.

## MEMORANDUM AND ORDER

CONABOY, Chief Judge.

### I

Plaintiff, a *pro se* litigant, brought this suit in federal court on January 29, 1990, after filing a document entitled "Application for Issuance of a Special or Preliminary Injunction, Ex Parte and Without Hearing". Doc. No. 1. The crux of Plaintiff's grievance centers around the activities of the Office of Thrift Supervision (hereinafter "OTS") and its dealings with Atlantic Financial Federal (hereinafter "Atlantic" or "the Association"), a federally-chartered and insured savings and loan association.[1]

After determining that Atlantic was in an unsafe and unsound condition to transact business, the Director of OTS appointed the Resolution Trust Corporation as a receiver for the Association on January 11, 1990. Soon afterwards, Plaintiff filed suit in the United States District Court for the Middle District of Pennsylvania challenging the constitutionality of the government's actions. Acting as "the newly elected Chairman of the Board, President, and Chief Executive Office of Atlantic Financial Federal", Plaintiff Shemonsky sought to have this court enjoin the Defendants from enforcing the "Receivership Order". Doc. 1 at ¶ 1. Plaintiff believes that the OTS has improperly "stripped (Atlantic) of its Corporate rights, and its Federal Banking Charter" causing "immediate, serious, and irreparable harm" to the Association, its employees, stockholders, and customers. *Id.* at ¶ 10.

On February 1, 1990, this court issued an order directing the Defendants to show cause why the Plaintiff's request for injunctive relief should not be granted and the OTS enjoined from enforcing the Receivership Order. Doc. No. 3. In response, the Defendants filed a motion to dismiss with a supporting brief pursuant to Federal Rule of Civil Procedure 12. Doc. Nos. 7 and 8. Shemonsky has filed a brief in opposition and also has supplemented the record with additional facts [2] and moved to dismiss the attorney of record representing the Defendants.[3] Doc. Nos. 9, 10, and 11.

### II

■ Defendants seek to dismiss this action on the grounds that jurisdiction is lacking, venue is improper, service of process is insufficient, and the complaint fails to state a claim upon which relief can be granted. Of primary concern to this court is the jurisdictional issue raised by the Defendants since it strikes at the very heart of this court's power to hear Plaintiff's grievance.

Specifically, the Defendants' challenge this court's authority to temporarily or preliminarily enjoin the *actions* of the appoint-

1. According to the Defendants, Atlantic Financial Federal was the largest savings and loan association in Pennsylvania with 78 branch offices located throughout the Commonwealth. At the time the OTS took action against it, Atlantic was among the thirty (30) largest savings institutions in the United States. Defendants' Memorandum of Law, Doc. No. 8 at 4.

2. It is unclear whether Plaintiff is attempting to file an Amended Complaint pursuant to Federal Rule 15(a) or is merely providing the court with the omitted original complaint to this action. *See* Doc. No. 1 and 10. For purposes of clarity, this court has reviewed and considered the information contained in the document entitled "New Matter" in writing this decision.

3. Plaintiff has moved to dismiss counsel for the Defendants based on what is perceived to be a conflict of interest involving said counsel and Atlantic. Doc. No. 9. How counsel's representation of another banking institution somehow alters the legal arguments it has presented here, however, is difficult to discern. We shall, therefore, deny Plaintiff's motion and proceed to examine the arguments presented.

ed receiver until a challenge to the *actual appointment* is made pursuant to the Financial Institutions Reform, Recovery, and Enforcement Act (hereinafter "FIRREA")[4]. *See* Act of Aug. 9, 1989, Pub.L. No. 101–73, § 301, Sec. 5(d)(2)(E), 1989 *U.S. Code Cong. & Ad.News* (103 Stat.) 187; Doc. No. 8 at 8. Plaintiff questions such an assertion and basically argues that Congress cannot limit the authority of the court to review the merits of any legal claim. Doc. No. 11 at 1–3. After reviewing the parties' briefs, however, this court is of the opinion that jurisdiction, as well as venue, is lacking and that Defendants' motion to dismiss must be granted.

### III

The relevant statutory provision under FIRREA concerning judicial intervention into these matters reads as follows:

(E) POWER OF APPOINTMENT; JUDICIAL REVIEW.—The Director (of the Office of Thrift Supervision) shall have exclusive power and jurisdiction to appoint a conservator or receiver for a Federal savings association. If, in the opinion of the Director, a ground for the appointment of a conservator or receiver for a savings association exists, the Director is authorized to appoint ex parte and without notice a conservator or receiver for the savings association. In the event of such appointment, the association may, within 30 days thereafter, bring an action in the United States district court for the judicial district in which the home office of such association is located, or in the United States District Court for the District of Columbia, for an order requiring the Director to remove such conservator or receiver, and the court shall upon the merits dismiss such

action or direct the Director to remove such conservatory or receiver.

Pub.L. No. 101–73, § 301, Sec. 5(d)(2)(E), 1989 *U.S. Code Cong. & Ad.News* (103 Stat.) 187.

Moreover, FIRREA provides the following as to the court's authority to restrain the actions of a receiver:

(G) COURT ACTION.—Except as otherwise provided in this subsection, no court may take any action for or toward the removal of any conservator or receiver or, except at the request of the Director, to restrain or affect the exercise of powers or functions of a conservator or receiver.

Thus, Congress has explicitly limited not only the circumstances under which the court can act but also the place a party can challenge a receiver's appointment since venue lies

... in the United States district court for the judicial district in which the home office of such association is located, or in the United States District Court for the District of Columbia ...

Pub.L. No. 101–73, § 301, Sec. 5(d)(2)(E), 1989 *U.S. Code Cong. & Ad.News* (103 Stat.) 187.

Contrary to Plaintiff's arguments as to the jurisdictional authority of the federal courts, historical as well as legal precedent has long ago established that they are tribunals of limited jurisdiction and can only act based upon an explicit grant of authority under the Constitution and law of the United States. Congress and the courts have acted, through legislation and case precedent, to delineate the scope of judicial review throughout the history of the Republic. *Marbury v. Madison*, 1 Cranch 137, 2 L.Ed. 60 (1803) (establishing the con-

---

**4.** In the hope of salvaging the thrift industry and addressing some of the causes of the current crisis facing the banking community, Congress passed FIRREA which was signed into law by President Bush on August 9, 1989. According to a recent article published by the Federal Bar Association,

The primary purposes of FIRREA are to provide and administer the funding necessary to resolve failed thrifts and to dispose of these institutions' assets, to establish a distinction between the regulatory and insurance func-

tions of the thrift industry, to establish stronger capital standards for thrifts and to enhance the enforcement powers of the regulatory agencies to protect against fraud and insider abuse.

*See* Glancz, *Thrift Industry Restructured: An Overview of FIRREA*, Vol 36, Federal Bar News & Journal, No. 10 at 473–74 (December 1989); *see also*, Act of Aug. 9, 1989, Pub.L. No. 101–73, Section 101, 1989 *U.S. Code Cong. & Ad.News* (103 Stat.) 187.

cept of judicial review as a cornerstone of American jurisprudence); *Martin v. Hunter's Lessee,* 1 Wheat. 304, 4 L.Ed. 97 (1816) (Article III is "not mandatory, and congress may constitutionally omit to vest the judicial power in courts of the United States); *Ex parte McCardle,* 7 Wall. 506, 19 L.Ed. 264 (1869) (Congress does have some power to limit the appellate jurisdiction of the Supreme Court); *Lauf v. E.G. Shinner & Co.,* 303 U.S. 323, 58 S.Ct. 578, 82 L.Ed. 872 (1938) (Norris–LaGuardia Act of 1932 sustained depriving federal courts of "jurisdiction" to issue injunctions in labor disputes).

■ Thus, in citing relevant statutory provisions and case law on the subject, counsel has made a strong argument that Congress has limited the authority of the courts to intervene in these regulatory proceedings so that swift action can be taken to stabilize precarious economic situations and minimize the losses caused by troubled and failing financial institutions. *See Biscayne Federal Savings & Loan Association v. Federal Home Loan Bank Board,* 720 F.2d 1499, 1503 (11th Cir.1983). Of course, the courts are not wholly precluded from reviewing the actions of the regulatory banking agencies and appropriate statutory provisions exist which allow for judicial intervention at the appropriate time. *See* FIRREA at § 301, Sec. 5(d)(2)(E), 1989 *U.S.Code Cong. & Ad.News* (103 Stat.) 187, cited in Defendants' Memorandum of Law, Doc. No. 8 at 8. As currently framed, however, the instant suit is not the appropriate vehicle to accomplish the relief sought by the Plaintiff.[5]

In light of the above, we hold that this court lacks jurisdiction to enter the injunc-

tive relief requested by the Plaintiff. Furthermore, proper venue for this suit lies in the Eastern District of Pennsylvania, since that is were Atlantic's home office is located, or in the United States District Court for the District of Columbia.

Accordingly, we shall grant the Defendants' motion and dismiss this suit.

---

5. Even if this court considers Plaintiff's *pro se* status and construes Shemonsky's petition as a challenge to the appointment of the receiver rather than for injunctive relief, we could not justify transferring this suit pursuant to 28 U.S.C. § 1406(a) since there appears to be several flaws in Plaintiff's case.

First, there remains a genuine question as to whether Plaintiff has standing to sue under FIRREA since the Act requires that "the association bring suit in the district court. *See Id.,* § 301, Sec. 5(d)(2)(E), 1989 *U.S.Code Cong. & Ad.News* (103 Stat.) 187. Moreover, Plaintiff's claim that he was denied due process by the actions of the OTS in appointing a receiver would appear to

lack merit in light of past case law. *See Fahey v. Mallonee,* 332 U.S. 245, 67 S.Ct. 1552, 91 L.Ed. 2030 (1947); *Haralson v. Federal Home Loan Bank Board,* 655 F.Supp. 1550, 1557 (D.C.C. 1987); *Fidelity Savings and Loan Association v. Federal Home Loan Bank Board,* 689 F.2d 803 (9th Cir.1982), *cert. denied,* 461 U.S. 914, 103 S.Ct. 1893, 77 L.Ed.2d 283 (1983); *but compare, Olympic Federal Savings and Loan Assoc. v. Director, OTS,* 732 F.Supp. 1183 (D.D.C.1990). Finally, there were no legitimate grounds presented by the Plaintiff to show that the OTS was incorrect in its assertions concerning the application for FIRREA in the case of Atlantic Financial.