RESOLUTION TRUST CORPORATION, as Receiver for Valley Savings, a Federal Savings and Loan Association, Hutchinson, Kansas, Plaintiff,

v.

Michael J. FRIESEN; Lydia K. Friesen; Farmers State Bank of Ingalls; Kansas Department of Revenue; and Pauline G. Rains, individually, *in rem* and as Executrix for the Estate of Gilbert R. Rains, Defendants.

No. 90–1167–C.

United States District Court, D. Kansas.

Jan. 14, 1992.

Jack C. Marvin, Susan G. Saidian, Morrison & Hecker, Wichita, Kan., for Resolution Trust Corp.

Jon R. Craig, Phyllis F. Wendler, Michael J. Friesen, Friesen & Wendler, P.A., Garden City, Kan., for Michael J. Friesen.

Phyllis F. Wendler, Michael J. Friesen, Friesen & Wendler, P.A., Garden City, Kan., for Lydia K. Friesen.

Philip D. Ridenour, Ridenour and Knobbe, Cimarron, Kan., for Farmers State Bank of Ingalls.

D. Philip Wilkes, Kansas Dept. of Revenue, Topeka, Kan., for Department of Revenue, Kansas State.

Jon R. Craig, Garden City, Kan., for Pauline G. Rains.

Pauline G. Rains, pro se.

## MEMORANDUM AND ORDER

CROW, District Judge.

The case comes before the court on two motions. Defendants, Pauline E. Rains, Michael J. Friesen and Lydia K. Friesen, ask the court to alter, vacate and set aside its order of July 25, 1991, (Dk. 72) in which the plaintiff's motion for summary judgment against defendant Rains was granted as uncontested. Now that defendants Michael J. Friesen and Lydia K. Friesen have

filed their response to the plaintiff's motion for summary judgment and the bankruptcy stay is no longer effective, the plaintiff's motion is ripe against the Friesens. Oral argument is requested by the Friesens and denied by the court since it would not materially assist a decision on the motion.

## MOTION TO ALTER, VACATE AND SET ASIDE

■ Plaintiff, Resolution Trust Corporation ("RTC"), filed its motion for summary judgment with supporting memorandum on October 24, 1990. (Dk. 27, 28). On November 19, 1990, defendants, Michael J. Friesen, Lydia K. Friesen and Pauline G. Rains filed a motion to extend time for filing their responses. (Dk. 29). The Magistrate Judge granted the motion and extended the time to February 15, 1991. (Dk. 31).

On February 21, 1991, a motion to enlarge discovery deadlines and time for filing a response was filed by the defendants by and through their counsel Jon R. Craig and Phyllis F. Wendler. (Dk. 52). Jon R. Craig was the only attorney of record for defendant Rains. (Dk. 24). Even though the defendant's motion to enlarge was untimely and mentioned no basis for finding excusable neglect, the Magistrate Judge granted the defendants until April 5, 1991, to file their responses. (Dk. 55).

On April 5, 1991, a motion to extend time was filed. (Dk. 58). The motion said it was brought by the defendants and was signed only by Phyllis F. Wendler, the attorney of record for the Friesens. The motion does not mention defendant Rains or her counsel of record, Jon R. Craig. The plaintiff filed a memorandum in opposition on April 18, 1991, pointing out that defendant Rains had not joined in the motion and that the RTC's motion for summary judgment should be granted against her. (Dk. 61 at 2). Before this court entered its order of July 25, 1991, defendant Rains filed nothing contesting the RTC's position about her failure to join or even suggesting that she believed the April 5th motion was filed on her behalf. On this record, the district court granted the RTC's motion for summary judgment against defendant Rains as uncontested.

Defendants now move to alter, vacate and set aside the court's summary judgment order against Rains. Their two-page motion offers four conclusory reasons for the requested relief and is signed by Michael J. Friesen and Robert Johnson. Their two-page memorandum in support charges the court with applying double standards in the enforcement of local rules and with using legal technicalities to deny equitable relief to the defendants. The plaintiff responds that defendant Rains is not entitled to any relief under Federal Rules of Civil Procedure 59 and 60 and that she has no reason for claiming excusable neglect or surprise.

First, the court is concerned that defendant Rains' motion does not comply with Fed.R.Civ.P. 11, which provides in pertinent part: "Every pleading, motion and other paper of a party represented by an attorney shall be signed by at least one attorney of record in the attorney's individual name, whose address shall be stated." The only attorney of record for defendant Rains is Jon R. Craig. Neither his signature nor his name appears on the defendant Rains' motion. Michael Friesen and Robert Johnson have signed the motion but neither attorney has entered his appearance for the defendant Rains. Robert Johnson has not signed this particular motion for Jon R. Craig. The court cautions the defendants that compliance with Fed.R.Civ.P. 11 is not a mere legal technicality and will be expected in future pleadings. In this instance, the court will overlook the noncompliance with Rule 11 and will address the merits of defendant Rains' motion.

Defendants' careless attitude towards the local rules of this court, as well as the Federal Rules of Civil Procedure, have forced them into the unenviable position of blaming the court for the consequences suffered with the rules enforced against them. This court does not accept that blame. The record fully reflects that this court and the Magistrate Judge have indulged the defendants on more than one occasion. The court believes it has en-

forced the rules of practice fairly and without favoritism to any party.

Prior to the April 5th motion, defendant Rains joined in motions of other defendants only by a pleading signed by her counsel of record. The plaintiff's discovery requests were separately answered by her. By virtue of plaintiff's memorandum in opposition filed in April of 1991, defendant Rains was on notice that she had not properly filed or joined in the motion for extension of time. Nonetheless, defendant Rains took no action such as filing a separate motion for extension, filing a reply brief indicating her excusable neglect, or filing for leave of the court to join in the earlier motion for extension. In other words, Rains did not simply overlook the rules for filing a motion but flatly refused to comply with the requirements once informed of them and waited for the court to enforce them. Such disregard of simple procedural rules cannot be called excusable neglect.

Motions to alter and amend are intended to correct manifest errors of law or fact or to present newly discovered evidence under limited circumstances. *Fontenot v. Mesa Petroleum Co.,* 791 F.2d 1207, 1219 (5th Cir.1986). Carelessness by a litigant or her counsel is not a ground for granting relief under Fed.R.Civ.P. 60(b)(1). *Pelican Production Corp. v. Marino,* 893 F.2d 1143, 1146 (10th Cir.1990). The burden is on the moving party to plead and prove excusable neglect. *Id.* The defendant Rains has presented nothing to show a manifest error of law or fact or to prove excusable neglect. For these reasons, the court denies the defendants' motion to alter, vacate and set aside the court's order of July 25, 1991.

## MOTION FOR SUMMARY JUDGMENT

The RTC filed its motion for summary judgment on October 24, 1990. On their third request for an extension of time, the Friesens were told by this court in the order of July 25, 1991, that their mere allegation for more discovery would not be adequate cause for additional extensions, that they should comply instead with Fed.R.Civ.P. 56(f), and that their response was due in twenty days. The Friesens filed their response on August 14, 1991, (Dk. 75) and followed this with a notice of stay pursuant to 11 U.S.C. § 362 filed September 6, 1991, (Dk. 85). The RTC filed a notice on December 3, 1991, stating that the Friesens' bankruptcy case had been dismissed with prejudice on November 5, 1991, pursuant to 11 U.S.C. § 1112(e). (Dk. 86).

A motion for summary judgment gives the judge an initial opportunity to assess the need for a trial. Without weighing the evidence or determining credibility, the court grants summary judgment when no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson,* 477 U.S. at 251–252, 106 S.Ct. at 2512.

An issue of fact is "genuine" if the evidence is significantly probative or more than merely colorable such that a jury could reasonably return a verdict for the nonmoving party. *Id.* at 248, 106 S.Ct. at 2510. An issue of fact is "material" if proof of it might affect the outcome of the lawsuit. 477 U.S. at 249, 106 S.Ct. at 2510–11. Factual inferences are drawn to favor the existence of triable issues, and where reasonable minds could ultimately reach different conclusions, summary judgment is inappropriate. *See Riley v. Brown & Root, Inc.,* 896 F.2d 474, 476–77 (10th Cir. 1990).

The movant's initial burden under Fed.R.Civ.P. 56 is to show the absence of evidence to support the nonmoving party's case. *Windon Third Oil and Gas v. Federal Deposit Ins.,* 805 F.2d 342, 345 (10th Cir.1986), *cert. denied,* 480 U.S. 947, 107 S.Ct. 1605, 94 L.Ed.2d 791 (1987). The movant must specify those portions of " 'the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits if any,' " which demonstrate the absence of a genuine issue of

fact. *Windon*, 805 F.2d at 345 (quoting Fed.R.Civ.P. 56(c)). It may be sufficient for the movant to establish that the alleged factual issues are without legal significance. *Dayton Hudson Corp. v. Macerich Real Estate Co.*, 812 F.2d 1319, 1323 (10th Cir.1987).

The opposing party may not rest upon mere allegations or denials in the pleadings but must set forth specific facts supported by the kinds of evidentiary materials listed in Rule 56(c). *Anderson*, 477 U.S. at 250, 106 S.Ct. at 2511. The evidence is deemed true and all reasonable inferences are drawn in his favor. *Windon*, 805 F.2d at 346. More than a "disfavored procedural shortcut," summary judgment is an important procedure "designed 'to secure the just, speedy and inexpensive determination of every action.' Fed.R.Civ.P. 1." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986).

Evidence must be admissible at trial before it can be considered on a motion for summary judgment, unless its admissibility is unchallenged. *Colan v. Cutler–Hammer, Inc.*, 812 F.2d 357, 265 n. 14 (7th Cir.1987). Hearsay evidence in depositions or affidavits has been excluded from consideration in a summary judgment proceedings. *Ritchie Enterprises v. Honeywell Bull, Inc.*, 730 F.Supp. 1041, 1043 (D.Kan. 1990); *Gamboa v. Washington*, 716 F.Supp. 353, 362 (N.D.Ill.1989). Rule 56(e) of the Federal Rules of Civil Procedure provides in pertinent part: "Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence...."

An issue of law must be resolved before the court can determine the uncontroverted facts. Plaintiff takes issue with the declaration of Michael J. Friesen, attached to defendants' response, arguing it is unsworn and based on inadmissible hearsay. Friesen's declaration under penalty of perjury is a proper means for submitting evidence on a motion for summary judgment. D.Kan.Rule 206(c); 28 U.S.C. § 1746. On the other hand, Friesen's declaration is riddled with hearsay and matters upon which he has no personal knowledge or which he cannot give competent testimony [1].

For purposes of this motion, the pertinent uncontroverted facts are:

1. On or about June 12, 1984, Michael J. Friesen and Lydia K. Friesen ("Friesens") executed and delivered their promissory note to Valley Federal Savings and Loan Association ("Valley Federal") in the amount of $50,000.00 with interest accruing at the rate of 15.50% per annum.

2. To secure repayment of this note, the Friesens executed and delivered their mortgage to Valley Federal on June 12, 1984, encumbering the following property:

West half of Block 2 and West half of Block 3, J.H. Mai Subdivision, Garden City, Kansas, Finney County, Kansas.

3. On March 23, 1990, the principal balance on the promissory note was $43,937.85, accrued interest was $3,543.19.[2]

4. The Friesens have failed to timely pay the amounts due pursuant to the terms of the promissory note.

5. Letters dated January 30, 1990, were sent to the Friesens giving them notice that

---

1. For example, at paragraph eight of his declaration, Friesen asserts the "subsequent appointment of a federal conservator was a sham and void and not in compliance with the statutory scheme...." At paragraph nine, he further says: "That because Valley refused our payments they cannot now claim that this money is due as more fully explained in the brief attached hereto." Both statements are legal arguments or conclusions that are not properly the subject of a declaration nor an issue of fact.

2. Defendants contend they are unable to either controvert or contest this paragraph and the previous paragraph without further discovery. The completion of discovery is not a precondi-

tion to the filing of, or the decision on, a summary judgment motion. *Weir v. Anaconda Co.*, 773 F.2d 1073, 1081 (10th Cir.1985). Rule 56(f) provides protection to the nonmoving party upon an affidavit setting forth why the facts cannot be presented without additional discovery and how a continuance would provide those facts necessary to rebut the allegations of no genuine issue of material fact. *Pizza Management, Inc. v. Pizza Hut, Inc.*, 737 F.Supp. 1154, 1169 (D.Kan.1990). Friesen's declaration fails to satisfy these requirements as they relate to the facts set forth in paragraphs two and three above.

they were in default on the note. The letter specified the amounts which the Friesens were required to tender to Valley Savings[3] by March 2, 1990, in order to cure the default. The letter warned that if the note was not made current by March 2, 1990, that Valley Savings could call the entire balance due and institute foreclosure proceedings. The letter also explained that even if the note was accelerated and foreclosure proceedings were commenced that the Friesens could effectively halt the proceedings by paying all sums then due, curing all breaches of any other covenants in the mortgage, paying all reasonable expenses incurred by Valley Savings, and taking other reasonable action required by Valley Savings to assure it that the note and mortgage would continue unimpaired.

6. On March 9 or 10, 1990, Lydia Friesen delivered three checks totalling $15,146.40 to Valley. Valley did not negotiate the checks.

7. On March 15, 1990, real estate ad valorem taxes against the mortgaged property were due and owing for the years of 1985 through 1988 and the first half of 1989. These taxes totalled $11,566.35.

8. On April 9, 1990, plaintiff filed this foreclosure suit.

9. On September 21, 1990, Valley requested verification from the Friesens that hazard insurance covering the mortgaged property was in effect. Receiving no response, Valley obtained coverage under a mortgagee's policy.

10. As of October 23, 1990, real estate *ad valorem* taxes for the years of 1987 through 1989 remained due and owing against the mortgaged property.

The Friesens principally advance two arguments against summary judgment. The RTC's appointment to the receivership over Valley Savings is procedurally defective. Second, their tendered payments have cured all defaults on the note and mortgage which could otherwise entitle the plaintiff to foreclosure. Neither defense

raises a factual issue requiring a trial on the merits.

 It is the law of the case, as set forth in the order of July 25, 1991, that the FSLIC was appointed conservator of Valley Savings on or about February 28, 1989, in compliance with the terms of 12 U.S.C. § 1441a(b)(6). Defendants have not come forth with any basis in law or fact for the court to reconsider that ruling. Moreover, the case law to date indicates the Friesens are without standing to challenge the appointment of the RTC. *RTC v. Commerce Partners*, 132 F.R.D. 443, 445–47 (W.D.La. 1990); *Shemonsky v. Office of Thrift Supervision*, 733 F.Supp. 892, 894–95 (M.D.Pa.), *aff'd mem.*, 922 F.2d 833 (3rd Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 1595, 113 L.Ed.2d 658 (1991); *Resolution Trust Corp. v. Babovich*, No. 89–4850, 1990 WL 86479, 1990 U.S.Dist. LEXIS 7454 (E.D.Pa. June 19, 1990). The Friesens' first argument is without merit.

 The Friesens believe their default has been cured by tendering checks totalling in excess of the amount of payments that were due and owing on their note and mortgage. They further contend that any other breaches of the note and mortgage are not material and will not sustain the plaintiff's foreclosure action. Regardless of the Friesens' tender, RTC argues foreclosure is proper as the Friesens are in default for not paying the *ad valorem* property taxes on the mortgaged property. Friesens do not consider the unpaid taxes to be a material breach as the mortgaged property is not subject to a tax foreclosure and, therefore, the plaintiff's security interest is not impaired.

Paragraph four of Friesens' mortgage reads in pertinent part:

4. **Charges; Liens.** Borrower shall pay all taxes, assessments and other charges, fines and impositions attributable to the Property which may attain a priority over this Mortgage, and leasehold payments or

---

3. Valley Savings, a federal savings and loan association, was chartered on September 6, 1989. It purchased certain assets and assumed certain liabilities of Valley Federal on September 7, 1989. Valley Savings purchased the notes and mortgages that are the subject of this action.

ground rents, if any, in the manner provided under paragraph 2 hereof or, if not paid in such manner, by Borrower making payment, when due, directly to the payee thereof. Borrower shall promptly furnish to Lender all notices of amounts due under this paragraph, and in the event Borrower shall make payment directly, Borrower shall promptly furnish to Lender receipts evidencing such payments.

The uncontroverted facts establish the Friesens have breached this provision by not paying the *ad valorem* property taxes, when due, on the mortgaged property. Without any citations in support, the Friesens insist this breach is immaterial as a tax foreclosure cannot occur until the taxes have remained unpaid for three years. The court finds no merit to the Friesens' position.

Under the mortgage, the Friesens were obligated to pay the property taxes "which *may* attain priority over" the mortgage. At paragraph eighteen to the mortgage, the borrowers agreed that their "breach of any covenant" to the mortgage would be cause for declaring all sums owed under the mortgage immediately due and payable and for foreclosing on the mortgaged property. The mortgage does not require the mortgagee to wait until the worst occurs, a tax foreclosure action is filed, before commencing its foreclosure action. The Kansas Supreme Court, overruling *Noble v. Greer*, 48 Kan. 41, 28 P. 1004 (1892), has held that it is proper for a mortgagee to act upon the terms of the mortgage by foreclosing when the mortgagor has failed to pay the taxes assessed against the mortgaged property. *Carpenter v. Riley*, 234 Kan. 758, 762–64, 675 P.2d 900 (1984). Even assuming the mortgage read otherwise, the Friesens have not provided the court with any authority for the proposition that under Kansas law certain property tax liens do not attach to the property until the property taxes remain unpaid for three years.

By not paying the property taxes due and owing on the mortgaged property, the Friesens have failed to cure their default. Paragraph nineteen of the mortgage requires the borrowers to cure "all breaches

of any other covenants." Consequently, the plaintiff properly rejected the Friesens' insufficient tender.

Because a substantial period of time has passed since the plaintiff filed its motion for summary judgment, the court asks the plaintiff to file current calculations of the principal and interest due on the Friesens' and Rains' notes and mortgages in order that the clerk of the court can enter judgment. Plaintiff should seek the defendants' agreement on those calculations. If no agreement can be reached, the plaintiff should file those calculations with supporting documentation, and the defendants will have ten days thereafter to submit their response in opposition with supporting documentation.

IT IS THEREFORE ORDERED that the defendants' motion to alter, vacate and set aside judgment (Dk. 72) is denied;

IT IS FURTHER ORDERED that the plaintiff's motion for summary judgment (Dk. 27) is granted on the issue that the Friesens have defaulted on the promissory note and that the plaintiff is entitled to foreclose on the mortgage;

IT IS FURTHER ORDERED that judgment shall not be entered against the defendants Michael J. Friesen, Lydia K. Friesen or Pauline G. Rains, individually, *in rem*, until the amount of the judgments has been agreed upon by the parties or determined by the court.